SH

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Luis Gutierrez-Valencia,<br><br>Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>Defendants. | No. CV 20-00376-PHX-JAT (DMF)<br><br><br>**ORDER** |

Plaintiff Luis Gutierrez-Valencia, who is currently confined in the Arizona State Prison Complex (ASPC)-Eyman, Special Management Unit in Florence, Arizona, brought this civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 16.) Defendants move for summary judgment, and Plaintiff opposes.[1] (Docs. 187, 206.)

**I.    Background**

On screening Plaintiff's First Amended Complaint (Doc. 16) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment medical care claims against former Arizona Department of Corrections (ADC) Director Charles Ryan (in his individual capacity), current ADC Director David Shinn (in his official capacity), ADC Deputy Director Richard Pratt (in his individual capacity), and ADC's contracted healthcare provider Corizon based on their alleged failure to treat Plaintiff's hernias. (Doc. 17.)  The Court directed these defendants to answer and dismissed the remaining claims

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 190.)

and Defendants. (*Id.*) Thereafter, the parties stipulated to the dismissal of Defendant Shinn, and the Court granted the stipulation. (Docs. 189, 191.) The remaining Defendants now move for summary judgment. (Doc. 187.)

**II.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Eighth Amendment Standard

To prevail on an Eighth Amendment medical claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to this analysis: an objective prong and a subjective prong. First, as to the objective prong, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).

Second, as to the subjective prong, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. To satisfy the knowledge component, the official must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. But the deliberate-indifference doctrine is limited; an inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not support an Eighth Amendment claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citations omitted); *see Estelle*, 429 U.S. at 106 (negligence does not rise to the level of a constitutional violation). Further, a mere difference in medical opinion does not establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Finally, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at

1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

## IV. Relevant Facts

Plaintiff began experiencing pain in his groin and abdomen in September 2017. (Doc. 207 at 8.) Plaintiff was seen by Registered Nurse (RN) Goff on September 11, 2017 and was assessed with alteration in comfort and referred to the provider. (*Id.*)

On September 24, 2017, Plaintiff requested to be seen by a doctor for stomach pain and a lump in his stomach. (*Id.* at 9.) On September 26, 2017, Plaintiff was seen by Nurse Practitioner (NP) Weigel, and NP Weigel noted "right upper quadrant has a solid non-movable mass about 1.0cm in size, tender." (*Id.*) NP Weigel ordered labs and submitted a consult request that same day for either an MRI ultrasound or CAT scan. (*Id.*) NP Weigel's consult request was denied by Corizon Utilization Management on October 6, 2017. (*Id.*)

On November 4, 2017, Plaintiff was seen by NP Gay for abdominal and groin pain and complaints of possible hernia. (*Id.* at 2, 10.) NP Gay diagnosed Plaintiff with two hernias—"one right upper quadrant hernia and second hernia right inguinal, lower abdomen." (*Id.*) NP Gay issued a Special Needs Order (SNO) for a hernia belt. (*Id.* at 10.) NP Gay told Plaintiff that "Corizon will not approve surgery unless the hernia is strangulated or bust [sic] through into the scrotum sack no matter the pain or other symptoms." (*Id.*)

On November 10, 2017, Plaintiff was seen by NP Weigel, and she also assessed Plaintiff with inguinal hernia and ventral hernia. (*Id.* at 11.) NP Weigel ordered a hernia belt and informed Plaintiff it would arrive in a couple of days. (*Id.*) NP Weigel told Plaintiff that "Corizon wont [sic] approve surgery unless the hernia becomes strangulated or drops into [Plaintiff's] scrotum." (*Id.*)

On December 7, 2017, Plaintiff submitted a Health Needs Request (HNR) complaining of stomach pain when he sits up and when he lays down. (*Id.* at 12.) The

following day, Plaintiff was seen by RN Popovski for stomach pain. (*Id.*) Plaintiff inquired about the status of his hernia belt, and RN Popovski said she would look into it. (*Id.*) RN Popovski also ordered an abdominal x-ray, but Corizon denied it, and stool softener was ordered instead. (*Id.*)

On December 12, 2017, NP Weigel saw Plaintiff for stomach pain. (*Id.*) NP Weigel assessed Plaintiff with abdominal pain, ordered labs and antacid, and advised Plaintiff to drink more water. (*Id.*)

On January 9, 2018, Plaintiff submitted an HNR complaining that he still had not received a hernia belt and continued to have sharp stomach pains. (*Id.*)

On or about January 10, 2018, Plaintiff submitted an HNR complaining of sharp pains and asking for a hernia belt, which he still had not received. (Doc. 188 (Defs.' Statement of Facts) ¶ 1; Doc. 207 at 1.)

On January 18, 2018, Plaintiff was seen on the provider line for hernia belt and abdominal binder request. (Doc. 188 ¶ 2.) Plaintiff denied any increased pain or discomfort at the visit. (*Id.*) RN Popovski diagnosed Plaintiff with hernias again and noted that the hernia belt had not arrived. (Doc. 207 at 13.)

On January 30, 2018, an Incident Command System (ICS) was activated due to Plaintiff's hernia pain, which he reported was so bad it was causing him chest pains; Plaintiff was prescribed Mylanta and sent back to his cell. (*Id.* at 13, 14.)

On February 5, 2018, Plaintiff requested Tramadol, Gabapentin and Baclofen daily. (Doc. 188 ¶ 3.) It was noted that his requests were not for hernia-related pain, and he was educated about the medical necessity of these drugs. (*Id.*) Plaintiff was prescribed Venlafaxine (muscle relaxer). (*Id.*) NP Gay again informed Plaintiff that Corizon would not approve hernia surgery unless the hernia was strangulated. (Doc. 207 at 14.)

On March 20, 2018, Plaintiff received a response to a grievance he filed regarding his hernia, which stated, in part, that "[b]ased on current practice, hernia repair is considered elective unless the hernia is not reducible or unless the hernia extends into the

- 5 -

scrotal sac and interferes with activities of daily living . . . a surgical consultation is not recommended at this time." (*Id.* at 16.)

On April 9, 2018, Plaintiff received a hernia belt and abdominal binder. (Doc. 188 ¶ 4.)

On April 19, 2018, Plaintiff requested to speak to a doctor; at sick call, he reported his back was out and was given a Toradol injection for pain. (Doc. 188 ¶¶ 5–6.)

On September 2, 2018, Plaintiff submitted an HNR complaining of residual pain from a gunshot wound and requested Gabapentin for relief. (*Id.* ¶ 7.) He was referred to the provider line. (*Id.*) On September 17, 2018, Plaintiff submitted an HNR requesting his TENS unit and SNOs be renewed; the plan was to renew his abdominal binder and hernia aid until April 20, 2020. (*Id.* ¶ 8.)

On December 9, 2018, an ICS was activated when Plaintiff began experiencing "severe abdominal pain," and Plaintiff was taken to the medical unit in a wheelchair. (Doc. 207 at 4.) Plaintiff complained of abdominal pain. (Doc. 188 ¶ 9.) He was given 600 mg of ibuprofen. (*Id.*)

On December 10, 2018, Plaintiff was seen for complaints of abdominal pain and inguinal hernia. (*Id.* ¶ 10.) Plaintiff was assessed with possible inguinal hernia and abdominal hernia. (*Id.* at 64.) Plaintiff was given Docusate 100mg twice a day as needed, Methocarbamol 750mg twice per day as needed, and SNOs (abdominal binder, hernia aid, TENS Unit) issued for one year. (*Id.* ¶ 10.)

On January 4, 2019, Plaintiff submitted an HNR for pain management, and asked for pain medication. (*Id.* ¶ 11.)

On April 4, 2019, Plaintiff submitted an HNR complaining about his hernia. (*Id.* ¶ 12.) Plaintiff stated that ADC had lost or taken his hernia belt and that he needed another one. (*Id.*; Doc. 207 at 5.) He was placed on the provider line. (Doc. 188 ¶ 12.)

On April 20, 2019, Plaintiff was diagnosed with a non-reducible inguinal hernia. (*Id.* ¶ 13.) He was referred for an outside consult for general surgery that same day. (*Id.*) Plaintiff had still not received a replacement hernia belt. (Doc. 207 at 6.)

On May 1, 2019, Plaintiff submitted another HNR about getting a hernia surgery. (Doc. 188 ¶ 14.) Approval for the surgery consult was still in progress. (*Id.*)

On May 24, 2019, Plaintiff saw general surgeon Dr. Whitman for a hernia consult; surgery was recommended, and Plaintiff was scheduled for surgery for July 15, 2019. (*Id.* ¶ 15.) Dr. Whitman told Plaintiff he should have had surgery a year-and-a-half ago. (Doc. 207 at 21.) Dr. Whitman noted that Plaintiff had an "abdominal wall bulge" that was "soft and tender" and that there was an "obvious right inguinal hernia, partially reducible[.]" (Doc. 207-4 at 10.) Dr. Whitman concluded that Plaintiff "needs abdominal wall hernia repair with mesh and right inguinal hernia repair with prolene mesh[.]" (*Id.*)

On May 29, 2019, Plaintiff was assessed following his outside general surgery consult. (Doc. 188 ¶ 16.) He was prescribed Gabapentin 300 mg once a day in the evening. (*Id.*) Follow up after surgery was recommended. (*Id.*)

On July 19, 2019, Plaintiff received surgery for excision of abdominal wall mass and right inguinal hernia repair with mesh. (*Id.* ¶ 18; Doc. 207-4 at 12.)

Plaintiff asserts that, while awaiting proper hernia care, he wrote to Defendant Ryan directly for help, but Defendant Ryan failed to respond or act, despite the fact that Plaintiff was suffering extreme pain. (*Id.* 3–4.) Plaintiff asserts ADC and Corizon have a policy, practice, and custom of failing to provide adequate medical care, delaying or denying medical care, and acting with negligence because they will not provide consultations and surgery for inmates suffering from painful hernias, except in emergency situations, regardless of the prisoner's severe daily pain. (*Id.* at 10.) Plaintiff asserts Defendants allowed medical care in ADC to deteriorate so they could reduce their costs and increase their profits. (*Id.*)

**V.    Procedural Issues**

Defendants assert that Plaintiff's allegations in the First Amended Complaint are limited to the medical care he received 2018 and after, and therefore, any evidence Plaintiff has presented that precedes 2018 should be disregarded. (Doc. 214 at 7.) Defendants also argue that Plaintiff did not disclose an Initial Disclosure Statement and that, in his response

to the summary judgment motion, Plaintiff presented various medical records that he failed to disclose to Defendants, including the expert opinion of Dr. Nicholas Namias. (*Id.* at 6, 7.)

First, Plaintiff's claim is not limited to events that occurred in and after 2018. The Court notes that the complaint's factual allegations may be refined in Plaintiff's subsequent filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (pro se petitioner could "bolster[] his claim by making more specific allegations . . . in later filings"); *Alvarez v. Hill*, 518 F.3d 1152, 1157–58 (9th Cir. 2008) (pro se litigant may refine claims and legal theories in later filings).

With respect to any undisclosed medical records, pro se prisoner actions are exempt from Rule 26 initial disclosure requirements. Fed. R. Civ. P. 26(a)(1)(B)(iv); *see* Doc. 29 at 1 (Court's Scheduling Order stating that an initial disclosure statement is not required). Moreover, to the extent that Plaintiff failed to proffer any medical records, the Court finds that failure to be harmless because all of the medical evidence Plaintiff cites in his response are Defendants' records to which they had access. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (late disclosure of evidence was harmless because the defendant had knowledge of the evidence).

However, the Court will disregard Dr. Namias' expert opinions and report. Dr. Namias' declaration and expert opinion concern an unrelated case he testified in before the United States District Court for the Northern District of Florida. (Doc. 207-3.) There is no evidence that Dr. Namias personally examined or treated Plaintiff or that he reviewed any of Plaintiff's medical records in order to determine whether Plaintiff received proper medical treatment for his hernia. Thus, Dr. Namias' opinions regarding an unrelated case are irrelevant to the instant action and will be disregarded.

## VI.     Medical Care Claim

### A.     Serious Medical Need

Defendants present no argument that Plaintiff's condition did not constitute a serious medical need, and the record is sufficient to support that Plaintiff's hernia was

"worthy of comment or treatment[,]" to satisfy the objective prong of the deliberate indifference analysis. *See McGuckin*, 974 F.2d at 1059-60. The Court will therefore consider whether Defendants' actions amounted to deliberate indifference.

### B. Deliberate Indifference

#### 1. Defendants Ryan and Pratt

The record does not support Eighth Amendment claims against Defendants Ryan and Pratt. Because Defendants Ryan and Pratt are sued in their individual capacities only (*see* Doc. 17 at 7), Plaintiff must show that he suffered a specific injury as a result of Defendants' conduct and must show an affirmative link between his injury and Defendants' actions. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Plaintiff asserts that he wrote to Defendant Ryan directly for help, but Defendant Ryan failed to respond or act, and that Defendant Pratt continued to renew Defendant Corizon's contract despite knowing Corizon was failing to provide adequate medical care. (Doc. 16 at 3–4, 5.) But no evidence has been presented regarding exactly when Plaintiff sent the communication to Defendant Ryan or exactly what it said, and other than Plaintiff's unsupported statements, there is no evidence that Defendant Ryan actually received the communication or was aware of Plaintiff's medical issues. Similarly, there is no evidence that Defendant Pratt personally participated in Plaintiff's medical care, that he was responsible for making treatment decisions regarding Plaintiff's medical condition, or that he directly acted in any way to deny Plaintiff's access to treatment for his hernia. Absent any evidence that Defendants Ryan and Pratt were personally involved in Plaintiff's medical care or that they were aware of, and disregarded, Plaintiff's serious medical need, Plaintiff's claim against Defendants Ryan and Pratt fails as a matter of law and must be dismissed.

#### 2. Defendant Corizon

##### a. *Monell* Standard

To prevail on a claim against Corizon as a private entity serving a traditional public function, Plaintiff must meet the test articulated in *Monell v. Dep't of Social Services of*

*City of New York*, 436 U.S. 658, 690-94 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law). Accordingly, Plaintiff must show that an official policy or custom caused the constitutional violation. *Monell*, 436 U.S. at 694. To make this showing, he must demonstrate that (1) he was deprived of a constitutional right; (2) Corizon had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Further, if the policy or custom in question is an unwritten one, the plaintiff must show that it is so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). While one or two incidents are insufficient to establish a custom or practice, the Ninth Circuit has not established what number of similar incidents would be sufficient to constitute a custom or policy. *See Oyenik v. Corizon Health Inc.*, No. 15-16850, 2017 WL 2628901, at *2 (9th Cir. June 19, 2017) (a reasonable jury could conclude that at least a dozen instances of defendant Corizon denying or delaying consultations and radiation treatment for cancer patient over a year amounts to a custom or practice of deliberate indifference) (citing *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992)). But "[t]here is no case law indicating that a custom cannot be inferred from a pattern of behavior toward a single individual." *Id.*

### b. Constitutional Violation

The evidence shows that on September 24, 2017, Plaintiff's treating provider NP Weigel submitted a consult request for either an MRI ultrasound or a CAT scan after

observing that Plaintiff's "right upper quadrant ha[d] a solid non-movable mass about 1.0cm in size, tender." (Doc. 207 at 9.) It is undisputed that Corizon Utilization Management denied the request on October 6, 2017. (*Id.*) Similarly, the record shows RN Popovski ordered an abdominal x-ray on December 7, 2017 after Plaintiff continued to complain of stomach pain, and Corizon also denied this request. (*Id.* at 12.) The record also shows that Plaintiff was issued an SNO for a hernia belt on November 4, 2017, but he did not receive it until five months later on April 9, 2018. (*Id.* at 10; Doc. 188 ¶ 4.) Plaintiff was finally referred for a surgical consult on April 20, 2019 and underwent hernia surgery on July 19, 2019. (Doc. 188 ¶¶ 13, 18; Doc. 207-4 at 12.) While he awaited the arrival of his hernia belt and approval for surgery, Plaintiff continued to be assessed with inguinal hernia, repeatedly complained of abdominal and groin pain, and sought updates on the status of his hernia belt. (Doc. 207 at 12–14; Doc. 188 ¶ 1–2.) On these facts, a reasonable jury could find that Corizon's failure to follow the providers' recommendations to seek diagnostic imaging for Plaintiff, the delay in providing Plaintiff with a hernia belt, and the delay in providing hernia surgery despite Plaintiff's continued complaints of abdominal and groin pain and multiple diagnoses of inguinal hernia by the medical staff amounted to deliberate indifference. Thus, there is a genuine material issue of fact whether Plaintiff's medical care amounted to a constitutional violation.

### c. **Existence of Policy or Custom**

The record also supports the existence of a policy or custom. Construing the facts in Plaintiff's favor, during Plaintiff's November 4, 2017 encounter with NP Gay, NP Gay informed Plaintiff that "Corizon will not approve surgery unless the hernia is strangulated or bust [sic] through into the scrotum sack no matter the pain or other symptoms." (Doc. 207 at 10.) A few days later, NP Weigel similarly advised Plaintiff that "Corizon wont [sic] approve surgery unless the hernia becomes strangulated or drops into [Plaintiff's] scrotum." (*Id.* at 11.) During another encounter with NP Gay on February 5, 2018, NP Gay reiterated that Corizon would not approve hernia surgery unless the hernia was strangulated. (*Id.* at 14.) Notably, on March 20, 2018, in response to an administrative

grievance Plaintiff filed regarding treatment for his hernia, Plaintiff was advised that "[b]ased on current practice, hernia repair is considered elective unless the hernia is not reducible or unless the hernia extends into the scrotal sac and interferes with activities of daily living . . . a surgical consultation is not recommended at this time." (*Id.* at 16.) This was despite Plaintiff's numerous documented complaints of pain, resulting in two ICS calls, from which a reasonable jury could infer Plaintiff's hernias interfered with the activities of daily living. On these facts, a jury could determine that Corizon has a policy of limiting hernia repair surgeries to prisoners who are diagnosed with non-reducible hernias or whose hernias extend into the scrotal sac and interfere with activities of daily living and otherwise refusing outside surgical consults, even for prisoners who suffer extreme pain. There is also a question of fact whether Corizon has a practice or custom of delaying the fulfillment of SNOs based on the five-month delay Plaintiff experienced in receiving his hernia belt despite repeatedly bringing the delay to the attention of multiple members of the Corizon medical staff during that time. *Oyenik*, 2017 WL 2628901, at *2 ("There is no case law indicating that a custom cannot be inferred from a pattern of behavior toward a single individual"); *Henry v. Cnty. of Shasta*, 132 F.3d 512, 521 (9th Cir. 1997) (finding a policy or "widespread pattern of abuse" more likely where multiple employees were involved in the constitutional violation).

### d. Policy or Custom Amounting to Deliberate Indifference

A policy or custom is deliberately indifferent when its inadequacy is obvious and likely to result in the violation of a constitutional right. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Whether an entity has a policy of deliberate indifference is generally a jury question. *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1194–95 (9th Cir. 2002).

Because deliberate indifference is exhibited where prison officials deny or delay medical treatment and harm results, *see Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990), and *Hunt*, 865 F.2d at 200, an ongoing policy or practice that denies or delays treatment for serious medical needs and thereby causes injury would constitute a deliberately indifferent policy. Here, Corizon's policy or practice of unnecessarily

delaying the fulfillment of prisoners' SNOs for medical devices and/or equipment is clearly inadequate and likely to result in the violation of a constitutional right.

Likewise, a policy limiting hernia repair surgery to prisoners with non-reducible hernias or whose hernias have extended into the scrotal sac is very restrictive. This type of policy results in medical decisions that do not take into account individual prisoners' pain levels, unique circumstances, or specific medical needs. *See Colwell v. Bannister*, 763 F.3d 1060, 1069 (9th Cir. 2014) (denying summary judgment where prison officials relied on the opinions of non-treating medical officials who made decisions based on an administrative policy). Additionally, such a policy may require prisoners to wait for their hernias to worsen to the point where they eventually meet Corizon's criteria for surgical intervention, while experiencing significant pain and/or decrease in activities of daily living in the meantime. A reasonable jury could find that such a policy is obviously inadequate to address individual prisoners' various medical needs, and that restricting hernia repair surgery pursuant to this policy could result in the violation of prisoners' constitutional rights.

Accordingly, there exists a triable issue of fact on this element.

### e. Moving Force Behind Constitutional Injury

To demonstrate that a policy was the moving force, a plaintiff must show that the defendant's policy was "closely related to the ultimate injury." *City of Canton*, 489 U.S. at 391. Plaintiff asserts Defendant Corizon's hernia policy prevented or delayed his surgery for almost two years, during which he was in terrible pain, his condition worsened, his complications and health risks increased, and his daily living was restricted. (Doc. 16 at 6-7, 11.) During this time, routine activities such as walking, running, lifting, coughing, urinating, defecating, or sitting up "caused the tissue to bulge out of [his] abdom[inal] wall and/or groin area[,] causing intense [and] excruciating pain." (*Id.* at 7.) The record shows that Plaintiff did not receive hernia surgery until he met Corizon's limited criteria for receiving that surgery, and when Plaintiff finally had a consult with Dr. Whitman, Dr. Whitman informed Plaintiff that he should have had surgery a year-and-a-half ago. (Doc.

207 at 21.) The record also shows that Plaintiff continued to experience abdominal and groin pain while waiting for his hernia belt to arrive. On this evidence, there is a question of fact whether Corizon policies or customs led to the delays in Plaintiff receiving a hernia belt and being approved for hernia surgery and were the "moving force" behind his ultimate injury.

Accordingly, with respect to Plaintiff's claim against Corizon, summary judgment will be denied.

**IT IS ORDERED**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 187).

(2) Defendants' Motion for Summary Judgment (Doc. 187) is **granted** as to Plaintiff's claims against Defendants Ryan and Pratt, and the Motion is **denied** as to Plaintiff's claim against Defendant Corizon.

(3) Defendants Ryan and Pratt are **dismissed with prejudice**.

(4) This action is referred to Magistrate Judge Michael T. Morrissey (selected by random draw) to conduct a settlement conference as to Plaintiff's remaining claim against Corizon.

(5) Defense counsel shall arrange for the relevant parties to jointly call Magistrate Judge Morrissey's chambers at (602) 322-7680 within 7 days to schedule a date for the settlement conference.

Dated this 13th day of July, 2022.

James A. Teilborg
Senior United States District Judge